**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA By MICHELLE A. HENRY, Attorney General, <br><br> Plaintiff, <br><br> v. <br><br> PROSPECT MEDICAL HOLDINGS, INC., PROSPECT CROZER, LLC, LEONARD GREEN AND PARTNERS, SAMUEL LEE, Individually, and DAVID TOPPER, Individually, <br><br> Defendants. | Case No: 2:24-cv-05853-JFM <br><br> ORAL ARGUMENT REQUESTED |

**DEFENDANTS PROSPECT MEDICAL HOLDINGS, INC. AND PROSPECT CROZER, LLC'S OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR REMAND**

DUANE MORRIS LLP
Alan C. Kessler
Luke P. McLoughlin
Lauren Pugh
30 S. 17th Street
Philadelphia, PA 19103

*Counsel for Defendants Prospect Medical Holdings, Inc. and Prospect Crozer, LLC*

# <u>TABLE OF CONTENTS</u>

Page

I.      INTRODUCTION ........................................................................................................1

II.     FACTUAL & PROCEDURAL BACKGROUND ............................................................2

III.    ARGUMENT ..............................................................................................................4

        A.      Legal Standard ............................................................................................ 4

        B.      The Commonwealth Is Not a Real Party in Interest Because It Does Not
                Assert Any Quasi-Sovereign Interests ................................................... 7

                1.      Under Either the Individual Claim-by-Claim Test or the Whole
                        Complaint Test, the Commonwealth Does Not Assert Any Quasi-
                        Sovereign Interests.............................................................................. 8

                2.      The Commonwealth Cites Distinguishable Caselaw Not
                        Applicable to Its Attempt to Enforce Private Contractual Rights............ 11

                3.      The Commonwealth's Remaining Arguments are Unavailing................ 14

                        a.      The Commonwealth Does Not Have A Duty To Enforce a
                                Private Agreement .......................................................14

                        b.      This Case Does Not Involve a Charitable Trust ............................15

                        c.      The Commonwealth Has Not Alleged an Injury To a
                                "Sufficiently Substantial" Portion of its Population .....................16

        C.      Attorneys' Fees and Costs Against Prospect Are Not Justified.......................... 17

IV.     CONCLUSION................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592 (1982) ............................7

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.,* 238 F. Supp. 3d 723 (E.D. Pa. 2017) ...................................................................................................................... 5-7, 17

*Burch v. Snider*, 461 F. Supp. 598 (D. Md. 1978) ..........................................................13

*City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882 (E.D. Pa. 2000), *aff'd*, 277 F.3d 415 (3d Cir. 2002)........................................................................................7

*Com. ex rel. Pappert v. TAP Pharm. Prod., Inc.*, 885 A.2d 1127 (Pa. Commw. Ct. 2005) ...........7

*Com. ex rel. Stumbo v. Marathon Petroleum Co., LLC*, 2007 WL 2900461 (E.D. Ky. Oct. 3, 2007) ...........................................................................................................12

*Connecticut v. Moody's Corp.*, 664 F. Supp. 2d 196 (D. Conn. 2009) .........................................12

*Fla. v. Exxon Mobil Corp.*, 2010 WL 11579390 (N.D. Fla. Apr. 16, 2010) .................................12

*Groves v. United States*, 941 F.3d 315 (7th Cir. 2019).................................................................12

*Harvey v. Blockbuster, Inc.*, 384 F. Supp. 2d 749 (D.N.J. 2005) ................................ 10, 12-13, 19

*Hood ex rel. Miss. v. Bristol Myers Squibb Co.*, 2014 WL 12631668 (D.N.J. July 22, 2014) .......................................................................................................................13

*Hood ex rel. Mississippi v. Microsoft Corp.*, 428 F. Supp. 2d 537 (S.D. Miss. 2006) .................14

*Illinois v. SDS W. Corp.*, 640 F. Supp. 2d 1047 (C.D. Ill. 2009)..................................................12

*Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008), *abrogated on other grounds, Mississippi ex rel Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014)................................................................................................................... 5-6, 11

*Martin v. Franklin Cap. Corp.*, 546 U.S. 132 (2005) ...................................................................18

*Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014).....................................1, 5

*Moor v. Alameda County*, 411 U.S. 693 (1973) ..........................................................................18

*Nuclear Eng'g Co. v. Scott*, 660 F.2d 241 (7th Cir. 1981) ..........................................................12

*Pennsylvania v. Harbour Portfolio Cap., LLC*, 2018 WL 5994985 (W.D. Pa. Nov. 15, 2018) ............................................................................................................*Passim*

*People of California v. Universal Syndications, Inc.*, 2009 WL 1689651 (N.D. Cal. June 16, 2009) ........................................................................................................................12, 19

*People of Illinois v. LiveDeal, Inc.*, 2009 WL 383434 (C.D. Ill. Feb. 12, 2009) ...................12, 19

*Ramada Inns, Inc. v. Rosemount Mem. Park Ass'n*, 598 F.2d 1303 (3d Cir. 1979).... 1, 5-7, 10, 18

*Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214 (3d Cir. 2005) ........................................................4

*South Carolina v. LG Display Co.*, 2011 WL 4344074 (D.S.C. Sept. 14, 2011) .........................12

*In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378 (S.D.N.Y. 2014) ............12, 19

*State of Ala. ex rel. Galanos v. Star Serv. & Petroleum Co.*, 616 F. Supp. 429 (S.D. Ala. 1985) .......................................................................................................................................12

*State of Mo. ex rel. Webster v. Best Buy Co.*, 715 F. Supp. 1455 (E.D. Mo. 1989) .....................12

*State of N. Y. by Abrams v. Gen. Motors Corp.*, 547 F. Supp. 703 (S.D.N.Y. 1982) ...................12

*W. Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441 (E.D. Pa. 2010) .........*Passim*

*Washington v. CLA Est. Servs., Inc.*, 2018 WL 2057903 (W.D. Wash. May 3, 2018) ................12

*Wisconsin v. Abbott Lab's*, 341 F. Supp. 2d 1057 (W.D. Wis. 2004) ..........................................12

**Statutes**

28 U.S.C. § 1332(a) .......................................................................................................................4

Alabama Motor Fuel Marketing Act.............................................................................................12

California False Advertising Law ..................................................................................................12

California Unfair Competition Law................................................................................................12

Commonwealth Attorneys Act, Section 204(c) ............................................................................16

Connecticut Unfair Trade Practices Act .......................................................................................12

Federal Trade Commission Act, Section 5 ...................................................................................12

Illinois Consumer Fraud and Deceptive Business Practices Act ...................................................12

Kentucky Consumer Protection Act and Anti-Price Gouging Act ................................................12

Missouri Merchandising Practices Act ..........................................................................................12

New Jersey Consumer Fraud Act ........................................................................................... 12-13

Pennsylvania Unfair Trade Practices and Consumer Protection Law ...........................................16

Washington Consumer Protection Act...........................................................................................12

## I.    __INTRODUCTION__

This is a contract action, and the Commonwealth of Pennsylvania is undisputedly <u>not a party</u> to the contract it claims has been "breached" by Prospect Medical Holdings, Inc. and Prospect Crozer, LLC.  The Commonwealth concedes it is not a party.  The real party in interest is the <u>actual</u> party to the contract: the Foundation for Delaware County ("Foundation"), which is a Pennsylvania citizen.  Because the Commonwealth is plainly not the real party in interest, and because no defendant is a Pennsylvania citizen, complete diversity exists and removal was and is fully appropriate.

While in certain circumstances diversity jurisdiction does not exist where a state is the only plaintiff and real party in interest, it is blackletter law that the state <u>shall not</u> be considered the "real party in interest" where an examination of the "essential nature and effect of the proceeding" reveals it to be otherwise.  *Ramada Inns, Inc. v. Rosemount Mem'l Park Ass'n*, 598 F.2d 1303, 1306 (3d Cir. 1979); *see also Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014).  This is well known authority in this Circuit.  Here, the Commonwealth asserts causes of action that are based in common law and arise entirely from obligations under a private contract.  The Commonwealth is not seeking to enforce any state statutes, and the relief sought by the Commonwealth arises from the parties' obligations under that contract.  The Foundation is plainly the real party in interest.

The Commonwealth responds that the Commonwealth does not represent the Foundation, the Foundation is not a party to this lawsuit, and the Commonwealth did not bring this lawsuit with or against the Foundation.  These points are simply misdirected.   And the cases cited by the Commonwealth, which discuss states' involvement in lawsuits to enforce consumer protection or antitrust laws, are inapposite and offer no challenge to binding precedent confirming the appropriateness of removal in this case.  *E.g.*, *Ramada Inns, Inc.*, 598 F.2d at 1306 (holding that

1

the state could not be considered a real party in interest in a contract dispute between two private parties). Indeed, the Commonwealth does not cite a <u>single case</u> in which a state was found to be the real party in interest where the dispute concerned a contract between private parties.

Prospect—joined by the other defendants—respectfully requests that this Court deny the Commonwealth's Amended Motion for Remand.[1]

## II.    <u>FACTUAL & PROCEDURAL BACKGROUND</u>

The Commonwealth of Pennsylvania, acting through its Attorney General, Michelle A. Henry, sued three private entities, Prospect Medical Holdings, Inc. ("PMH") and Prospect Crozer, LLC (together, "Prospect") and Leonard Green & Partners, and two individuals, Samuel Lee and David Topper (together, the "Co-Defendants") on October 28, 2024 in the Delaware County Court of Common Pleas. The same day, it filed a petition for a preliminary injunction and a motion for the appointment of a receiver.

The Commonwealth claims Prospect breached certain obligations under a 2016 Asset Purchase Agreement ("APA") that controlled the purchase of the Crozer Keystone Health System in Delaware County. The sole parties to the APA are Crozer-Keystone Health System as the seller and Prospect as the buyer. *See generally* APA (attached as Exhibit B to Complaint (ECF No. 1-1 at 58–134)). The Foundation is specified in the APA as the successor entity to the seller and is expressly authorized to enforce the APA. *See* APA ¶¶ 6.13, 14.21 (ECF No. 1-1 at 100, 130). The Commonwealth is not a party to the APA, and therefore was not a signatory to the APA. In fact, there is no mention of the Attorney General enforcing the agreement anywhere in the APA. The

---

[1] Co-Defendants Leonard Green & Partners, Samuel Lee, and David Topper are filing joinders to this Opposition.

APA does not confer third-party beneficiary rights upon any other person or entity.[2]  Despite this, the Commonwealth brings claims for breach of contract (Count I), negligent misrepresentation (Count II), unjust enrichment (Count III), and breach of fiduciary duty (Count V) stemming from the APA.

Based on these APA allegations, the Commonwealth seeks to commandeer the functioning Crozer Health hospital system and place it in the government's hands through a constructive trust (Count IV), seeks the revocation of a corporate franchise and appointment of a receiver (Count VI), and demands that the Court decree "funding . . . to maintain the operational costs of [the hospital system]" to support a transition to a nonprofit successor (Count VII).  Each of these claims has evident flaws—"funding to support [the] transition to [a] nonprofit successor" is not a cause of action, for example—but most relevant for purposes of this Motion is the fact that the Commonwealth concedes that it is not a party to the 2016 Asset Purchase Agreement that is the bedrock of its case.

Prospect properly removed this case to the United States District Court for the Eastern District of Pennsylvania on October 31, 2024 based on diversity jurisdiction.  *See* ECF No. 1.  The Commonwealth moved to remand on November 15, 2024 arguing that complete diversity does not exist because the Commonwealth is not a citizen of any state for the purposes of diversity jurisdiction.  *See* ECF No. 17.

Prospect filed an amended Notice of Removal on November 27, 2024, adding additional detail.  *See* ECF No. 24.  As the amended Notice of Removal demonstrates, the Commonwealth is

---

[2] *See* APA ¶ 14.20 ("[T]he terms and provisions of the Agreements are intended solely for the benefits of Buyers, Sellers, and their respective permitted successor or assigns, and it is not the intention of the Parties to confer, and this Agreement shall not confer, third-party beneficiary rights upon any other person or entity.") (attached as Exhibit B to Complaint (ECF No. 1-1 at 130).

not the real party in interest for jurisdictional purposes in a contract dispute involving private parties. Instead, the real party in interest is a Pennsylvania nonprofit corporation—the Foundation for Delaware County—which is the actual successor counterparty to the operative contract. *See* ECF No. 24 ¶ 15. None of the Defendants are citizens of Pennsylvania, but are all either citizens of Delaware or California for diversity purposes. *See id*. ¶¶ 16–26 (providing that Prospect Medical Holdings, Inc. is a citizen of Delaware and California; Defendant Prospect Crozer, LLC is a citizen of Delaware and California; Defendants Samuel Lee and David Topper are citizens of California; and no member of Defendant Leonard Green & Partners is a citizen of Pennsylvania).

The Commonwealth filed an Amended Motion for Remand on December 10, 2024. *See* ECF No. 29. The Commonwealth's Amended Motion for Remand claims that the Foundation is not the real party in interest because the Commonwealth does not represent the Foundation, the Foundation is not a party to this lawsuit, and the Commonwealth did not bring this lawsuit with or against the Foundation. *See* ECF No. 29 at 24. Yet, as the caselaw makes clear, that is not the test for determining who is the real party in interest. *See infra* Section III. Prospect meets the actual test applied in this Circuit.

The Commonwealth does not dispute the amount in controversy exceeds $75,000. *See generally* ECF No. 29.

## III.   **ARGUMENT**

### A.   **Legal Standard**

Diversity jurisdiction exists in cases where the amount in controversy exceeds $75,000 and where there is complete diversity between citizens of different states. *See* 28 U.S.C. § 1332(a). "The party asserting jurisdiction bears the burden of showing the action is properly before the federal court." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 219 (3d Cir. 2005).

While in some cases diversity jurisdiction does not exist where a state is the only plaintiff and real party in interest, it is blackletter law that the state shall not be considered the "real party in interest" for jurisdictional purposes where an examination of the "essential nature and effect of the proceeding" reveals that the state should not be considered the only plaintiff. *W. Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441 (E.D. Pa. 2010) (diversity jurisdiction held to exist); *see also Mississippi ex rel. Hood*, 571 U.S. at 174.

Therefore, regardless of the named parties in a lawsuit's caption, the "essential nature and effect of the proceeding" determines whether a state is the real party in interest for jurisdictional purposes. *Pennsylvania v. Harbour Portfolio Cap., LLC*, 2018 WL 5994985, at *1 (W.D. Pa. Nov. 15, 2018) (quoting *Ramada Inns, Inc.*, 598 F.2d at 1306); *Ramada Inns, Inc.*, 598 F.2d at 1306 ("[T]he question [of] whether a state is the real party in interest will turn on factors widely variant from case to case[.]").

While the Attorney General claims it has the "*parens patriae*" right to protect the interests of the general public, the very essence of this controversy is a contract (the APA) and the Commonwealth is not a party to that contract. It cannot assert a breach of the contract and all of its claims here similarly arise out of that same contract. Moreover, the Commonwealth has not brought any claims seeking to enforce state statutes. As such, it is not the real party in interest for claims which may arise out of a contract between private parties.

Where a private party or a subset of the Commonwealth is the real party in interest, diversity of citizenship exists, and federal jurisdiction is fully appropriate. *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.,* 238 F. Supp. 3d 723, 731–32 (E.D. Pa. 2017) ("Because the Court concludes that the real party in interest is the County of Santa Clara, diversity of citizenship existed when the case was filed and continues to exist now."); *Louisiana ex rel. Caldwell v. Allstate*

*Ins. Co.*, 536 F.3d 418, 429 (5th Cir. 2008) (holding that action brought by state was filed on behalf of insurance policyholders, who were real parties in interest who were aggrieved), *abrogated on other grounds, Mississippi ex rel Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014); *Comcast Corp.*, 705 F. Supp. 2d at 451–52 (holding that West Virginia was not acting in *parens patriae* capacity when the real parties in interest were individual consumers).[3]

Tellingly, in *Ramada Inns, Inc. v. Rosemount Memorial Park Association*, the United States Court of Appeals for the Third Circuit found the state of New Jersey not to be the real party in interest in a contract dispute between two private parties. As here, the core of the case was an allegation of breach of contract, and (again as here), because the state was not a party to the contract, and because any issues that affected the state were separate and completely distinct from the contract dispute, the state was deemed not to be the real party in interest. *See Ramada Inns, Inc.*, 598 F.2d at 1306 (holding that the state could not be considered a real party in interest in a contract dispute between two private parties). The state in *Ramada* was added as a necessary party, but notably the Third Circuit found that even when the state is a necessary party it does not become the real party in interest to a contract dispute. *Ramada* makes clear that in a contract dispute between private parties, those private parties are the real parties in interest. *Ramada* is the leading Third Circuit authority on real party in interest, and squarely supports Prospect's position.

---

[3] Relying on its misreading of the caselaw, the Commonwealth claims that the Foundation cannot be the real party in interest because the Commonwealth does not represent the Foundation, it is not a party to this lawsuit, and the Commonwealth did not bring this lawsuit with or against it. However, as the caselaw makes clear, none of those factors are relevant when considering which party is the real party in interest. Courts have found that the state is not the real party in interest when the state is seeking to vindicate the rights of a private party; when the state seeks relief on behalf of a discrete group; and where the relief sought would go to a specific county as opposed to the entire Commonwealth population generally. *See Allstate Ins. Co.*, 536 F.3d at 429; *Comcast Corp.*, 705 F. Supp. 2d at 450; *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 238 F. Supp. 3d at 730.

*See generally id.; see also Accord In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.,* 238 F. Supp. 3d at 731–32.

Invocation of "*parens patriae*" does not change the analysis, or the outcome. "Bald claims to the *parens patriae* power do not mean it is available." *City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 906 (E.D. Pa. 2000), *aff'd*, 277 F.3d 415 (3d Cir. 2002). As such, the Attorney General's attempt to shoehorn *parens patriae* into a breach-of-contract case between two private parties is unavailing. Instead, "a state claiming such standing must allege more 'than injury to an identifiable group of individual residents[,]'" and "the indirect effects of the injury must be considered as well in determining whether the State has alleged injury to <u>a sufficiently substantial segment of its population</u>." *Com. ex rel. Pappert v. TAP Pharm. Prod., Inc.*, 885 A.2d 1127, 1143 (Pa. Commw. Ct. 2005) (emphasis added). In other words, unlike suing to enforce a contract between two private parties, the state must sue on behalf of a "quasi-sovereign interest" that stands apart "from the interests of particular private parties." *Harbour Portfolio Cap., LLC*, 2018 WL 5994985, at *2.

There are two main categories of quasi-sovereign interests, neither of which is present here. "First, a State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general. Second, a State has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982). Here, the Commonwealth has failed to assert either such interest.

**B.    The Commonwealth Is Not a Real Party in Interest Because It Does Not Assert Any Quasi-Sovereign Interests**

As the Complaint makes clear, the Commonwealth is not truly proceeding in its *parens patriae* capacity because it has not expressed a quasi-sovereign interest that is separate from the

interests of private parties. Instead, it seeks to enforce a contract between two private parties to which it is not a party. Thus, the real party in interest for diversity purposes is the successor counterparty to the operative contract—the Foundation for Delaware County—a Pennsylvania citizen.

       1.    <u>Under Either the Individual Claim-by-Claim Test or the Whole Complaint<br>Test, the Commonwealth Does Not Assert Any Quasi-Sovereign Interests</u>

When examining whether a state is truly proceeding in *parens patriae* capacity, courts may examine whether a state is asserting a "quasi-sovereign interest" on either a claim-by-claim basis or as a single inquiry encompassing all claims. *See Comcast Corp.*, 705 F. Supp. 2d at 446. The Third Circuit has not ruled on which approach is appropriate in this Circuit yet. *Id.* at 447. Under either approach, the Commonwealth is not proceeding as a real party in interest in this suit.

Examining the Complaint on a claim-by-claim basis, the Commonwealth asserts seven claims, and the contract between Prospect and the Foundation is the absolute bedrock and the very essence of all the claims. Moreover, relief for those claims flows to the Foundation and arises solely by virtue of the APA.[4] <u>All</u> of the Commonwealth's claims stem from the alleged breach of a contract to which the Commonwealth was not party. For example, the Commonwealth claims in its Complaint that:

- Prospect "has not yet fulfilled its pension obligation commitment pursuant to the APA" (Compl. ¶ 24);

- Prospect has breached the APA's provisions precluding the "closure" of licensed hospitals without the consent of the Foundation in advance (Compl. ¶ 24 (citing APA ¶ 11.16));

---

[4] *See* Complaint's Prayer for Relief (ECF No. 1-1 at 27) (requesting the Court enter an order declaring Defendants' "conduct described herein to be in violation of the terms of the APA and contrary to the material representations relied upon by the Commonwealth and this Court in approving the sale" and enjoining Defendants "and all other persons acting on their behalf directly or indirectly, from engaging in any future violations" of the APA).

- Prospect "knew or should have known that the sale and lease-back transactions burdened [Prospect] hospitals with new financial liabilities that they could not sustain risked defaulting on [Prospect's] obligations to operate a hospital system for 10 years" per the APA (Compl. ¶ 87);

- Prospect "failed to operate the hospital system in a commercially reasonable manner" per the APA (Compl. ¶ 97);

- Prospect violated its representations "within the APA as to its commitments to provide essential healthcare in the community" (Compl. ¶ 113).

The facts underlying this case are the result of a private bargain between Prospect and the Foundation.  As is apparent from the relief sought for each claim, the Commonwealth does <u>not</u> seek to gain money in its general treasury through civil penalties, or through an injunction ordering Defendants to comply with state statutes.  *Cf. Harbour Portfolio Cap., LLC*, 2018 WL 5994985, at *4 (finding the Commonwealth to be the real party in interest where "if the Commonwealth's suit succeeds, Pennsylvania stands to gain money in its general treasury through civil penalties, as well as an injunction ordering Defendants to comply with the relevant consumer protection statutes.").  Instead, the relief sought is contractual in nature, and arising from the APA, confirming that removal is appropriate.

For the same reasons outlined above, the Complaint as a whole does not seek to vindicate any quasi-sovereign interests.  The Commonwealth does not, and cannot, point to <u>any</u> applicable caselaw stating that a state may invoke *parens patriae* jurisdiction for breach-of-contract claims relating to contracts between two private parties because no such caselaw exists.  The Court may quickly reject the Commonwealth's attempt to cite cases where states brought consumer protection lawsuits under laws with general applicability, as those are plainly inapposite here.

Instead, all of the cases cited in the Commonwealth's Memorandum concern "enforcement actions" brought by states.  *See* ECF No. 29 at 18 (Section III.A.b, "The Commonwealth is the Real Party-in-Interest in ***Enforcement Actions*** Brought by the Attorney General.") (emphasis

added).  Here, however, the Attorney General is not "seek[ing] to enforce a state law claim on behalf of the state."  *Harvey v. Blockbuster, Inc.*, 384 F. Supp. 2d 749, 756 (D.N.J. 2005) (finding where the plaintiffs "bring the action on behalf of the interests of New Jersey citizens in general" they "are the alter ego[s] of the State.") (internal quotations omitted).  Instead, this is a case where, rather than enforce <u>actual state statutes</u>, the Commonwealth is trying to enforce its interpretation of a contract.  Indeed, any "federal judgment will have no effect other than to implicate the state's general 'governmental interest in the welfare of all its citizens . . .  and in securing compliance with all its laws,'" and, as such, "the state is not a real party in interest." *Ramada Inns, Inc.*, 598 F.2d at 1307 (citation omitted).

Like in *Ramada Inns, Inc. v. Rosemount Memorial Park Association*, where the Third Circuit found the state of New Jersey not to be the real party in interest in a contract dispute between two private parties, here the core of the case is an alleged breach of contract, and because the Commonwealth is not a party to the contract, the state is not the real party in interest. *See id.* at 1306–07.  Instead, the real party in interest is the actual successor counterparty to the Asset Purchase Agreement:  the Foundation as specified in the APA.  *See* APA ¶ 6.13 (attached as Exhibit B to Complaint (ECF No. 1-1 at 100); *id.*  (successor entity to be the "Crozer-Keystone Community Foundation" (later renamed)).  Indeed, the APA expressly provides that "the Foundation shall be entitled to an injunction or injunctions and any other such remedies to which the Parties are entitled at law or in equity, but only to prevent breaches of [the APA] and to enforce specifically the terms and provisions [of the APA]." *Id.* ¶ 14.21 (ECF No. 1-1 at  130).  Absent from the APA is any agreement from the parties that the Commonwealth can enforce the APA.

Accordingly, the Commonwealth is not the real party in interest, and the reference to "*parens patriae"* does not make it the real party in interest.  The real party in interest is the

Foundation, a Pennsylvania corporation with its principal place of business at 200 East State Street, Suite 304, Media, Delaware County, Pennsylvania 19063.  *See* ECF No. 24 ¶ 15.[5]  As such, it is a Pennsylvania citizen.    None of the Defendants are Pennsylvania citizens, which the Commonwealth does not dispute.  *Id.* ¶¶ 16–26.; *see generally* ECF No. 29.  Accordingly, complete diversity exists between the parties.

> ### 2.    The Commonwealth Cites Distinguishable Caselaw Not Applicable to Its Attempt to Enforce Private Contractual Rights

The Commonwealth brought claims stemming from an alleged breach of a private agreement.  Its cases, however, are inapposite.  None of the cases the Commonwealth cites deprive this Court of jurisdiction.

The Commonwealth has not and cannot point to a single case involving a state suing to vindicate a private breach-of-contract claim to which it is not a party, as the Commonwealth is doing here.  In cases such as this one where the Commonwealth is seeking to vindicate the rights of a private party, the private party is held to be the real party in interest.  *See Allstate Ins. Co.*, 536 F.3d at 429 (holding that action brought by state was filed on behalf of insurance policyholders, who were real parties in interest who were aggrieved); *Comcast Corp.*, 705 F. Supp. 2d at 451–52 (holding that West Virginia was not acting in *parens patriae* capacity when the real parties in interest were individual consumers).

Instead, the inapposite cases cited by the Commonwealth involve states suing to enforce consumer protection or antitrust statutes that are generally applicable to the states' citizens.  *See* ECF No. 29 at 18–22 (citing a variety of cases from different jurisdictions where the states were real parties in interest because they were seeking to enforce consumer statutes generally applicable

---

[5]    *See*  https://delcofoundation.org/app/uploads/2023/12/Foundation-for-Delaware-County-6-30-2023-Form-990-public-inspection-copy.pdf.

to the states' residents).[6]  Indeed, a "[s]tate has a clear quasi-sovereign interest in enforcing its own antitrust and consumer protection laws."  *South Carolina v. LG Display Co.*, 2011 WL 4344074, at *6 (D.S.C. Sept. 14, 2011).  However, those cases are inapplicable here—and in fact confirm Prospect's position—because the Commonwealth admits it is not seeking to enforce state statutes.  Instead, it brings a breach-of-contract claim arising from a contract between two private parties.

---

[6] All of the Commonwealth's cases are inapposite.  *See, e.g. Harvey,* 384 F. Supp. 2d at 751 (seeking to recover civil penalties and for a permanent injunction under the New Jersey Consumer Fraud Act); *Harbour Portfolio Cap., LLC*, 2018 WL 5994985, at *1 (alleging violations of several Pennsylvania consumer protection statutes); *Washington v. CLA Est. Servs., Inc.*, 2018 WL 2057903, at *1 (W.D. Wash. May 3, 2018) (alleging violations of the Washington Consumer Protection Act); *Com. ex rel. Stumbo v. Marathon Petroleum Co., LLC*, 2007 WL 2900461, at *1 (E.D. Ky. Oct. 3, 2007) (alleging violations of the Kentucky Consumer Protection Act and Anti-Price Gouging Act); *State of Ala. ex rel. Galanos v. Star Serv. & Petroleum Co.*, 616 F. Supp. 429, 430 (S.D. Ala. 1985) (alleging violations of Alabama Motor Fuel Marketing Act which is designed to forestall "price wars" between retail gasoline dealers in Alabama); *Illinois v. SDS W. Corp.*, 640 F. Supp. 2d 1047, 1049 (C.D. Ill. 2009) (alleging violations of Illinois' Consumer Fraud and Deceptive Business Practices Act); *Fla. v. Exxon Mobil Corp.*, 2010 WL 11579390, at *1 (N.D. Fla. Apr. 16, 2010) (alleging violations of Florida's price-gouging statute);  *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 383 (S.D.N.Y. 2014) (seeking to enforce nineteen different state consumer-protection and deceptive trade practice laws); *Connecticut v. Moody's Corp.*, 664 F. Supp. 2d 196, 197 (D. Conn. 2009) (alleging violations under the Connecticut Unfair Trade Practices Act); *People of California v. Universal Syndications, Inc.*, 2009 WL 1689651, at *1 (N.D. Cal. June 16, 2009) (alleging violations of California's Unfair Competition Law, California False Advertising Law, and Section 5 of the Federal Trade Commission Act); *People of Illinois v. LiveDeal, Inc.*, 2009 WL 383434, at *1 (C.D. Ill. Feb. 12, 2009) (alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act); *Wisconsin v. Abbott Lab's*, 341 F. Supp. 2d 1057, 1059 (W.D. Wis. 2004) (alleging defendants inflated the average wholesale prices of their drugs, thereby violating several provisions of Wisconsin law); *State of Mo. ex rel. Webster v. Best Buy Co.*, 715 F. Supp. 1455, 1456 (E.D. Mo. 1989) (alleging violation of the Missouri Merchandising Practices Act); *State of N. Y. by Abrams v. Gen. Motors Corp.*, 547 F. Supp. 703, 704 (S.D.N.Y. 1982) (alleging violations of consumer protection laws); *Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 244 (7th Cir. 1981), *overruled by Groves v. United States on other grounds*, 941 F.3d 315 (7th Cir. 2019) (alleging violations of Illinois environmental laws).

Moreover, most of the cases that the Commonwealth cites sought to collect civil penalties that would flow directly to the state's treasury.  *See* ECF No. 29 at 18–22.[7]   Indeed, it is "well accepted that a state is the real party in interest when it brings a claim for civil penalties because such awards add only to the state's coffers rather than any individual's bank account."  *Hood ex rel. Miss. v. Bristol Myers Squibb Co.*, 2014 WL 12631668, at *2 (D.N.J. July 22, 2014) (internal citations omitted).  Here, however, the Commonwealth does not seek any civil penalties that would flow to its treasury, further undermining the Commonwealth's assertion that it is the real party in interest.

Although in many *parens patriae* cases, the state seeks not only civil penalties but also broad injunctive relief, the injunctive relief sought by the Commonwealth here is far different and aimed at enforcing the private contract. Thus, while courts have accepted the notion that a state may be a real party of interest where it seeks injunctive relief to enforce consumer protection statutes (for example, *Comcast Corp.*, 705 F. Supp. 2d at 447),[8] mere references to injunctive relief do not make a non-party a party to a contract in a contract action.  *See* ECF No. 1-2 at 13 ¶ 33 ("[S]hould a preliminary injunction be granted [Prospect] will merely be required to uphold the obligations they already agreed to in the APA until a successor health care provider is found.").  The Commonwealth is not seeking to enforce a consumer protection statute or other comparable statute but instead seeks to enforce a private contract.  The Commonwealth's injunction is not

_____

[7] *See e.g., Burch v. Snider*, 461 F. Supp. 598, 601 (D. Md. 1978) ("the Attorney General is acting not in his personal capacity, but as a representative of the State . . . indeed, he seeks damages to be paid into the State treasury."); *Harbour Portfolio Cap., LLC*, 2018 WL 5994985, at *4 ("Here, if the Commonwealth's suit succeeds, Pennsylvania stands to gain money in its general treasury through civil penalties[.]").

[8] *See, e.g. Harvey*, 384 F. Supp. 2d at 751 (seeking permanent injunction under the New Jersey Consumer Fraud Act); *Harbour Portfolio Cap., LLC*, 2018 WL 5994985, at *1 (seeking injunctive relief ordering defendants to comply with Pennsylvania consumer protection laws).

"aimed at securing an honest marketplace, promoting proper business practices, protecting [the Commonwealth's] consumers, [or] advancing [the Commonwealth's] interest in the economic well-being of its residents." *Hood ex rel. Mississippi v. Microsoft Corp.*, 428 F. Supp. 2d 537, 546 (S.D. Miss. 2006). Instead, the Commonwealth is seeking to enforce a private contract, one to which it is not a party, and one which only effects a very small percentage of the Commonwealth's citizens as discussed more below. This is a textbook case of where the Commonwealth is not the real party in interest.

### 3.   The Commonwealth's Remaining Arguments are Unavailing

Seemingly aware that the cases it cites that seek to enforce consumer fraud statutes or collect civil penalties are wholly distinguishable from the instant case, the Commonwealth attempts to argue that it is the real party in interest because: (1) it has a duty to enforce the APA (2) it has broad supervisory authority over all property committed to charitable purposes; and (3) it has standing to pursue actions that protect the public. *See* ECF No. 29 at 25–27. These arguments are equally unavailing.

### a.   *The Commonwealth Does Not Have A Duty To Enforce a Private Agreement*

The Commonwealth claims, without citing any caselaw or the APA, that is "has the duty to enforce the terms of the [APA]." ECF No. 29 at 25. No such duty exists as is clear from the express terms of the APA, which the Commonwealth attaches to its Complaint.

Per its plain language, the APA provides "the terms and provisions of the Agreements are intended <u>solely</u> for the benefits of Buyers, Sellers, and their respective permitted successor or assigns, and it is <u>not</u> the intention of the Parties to confer, and <u>this Agreement shall not confer, third-party beneficiary rights upon any other person or entity</u>." *See* APA § 14.20 (attached as Exhibit B to Complaint (ECF No. 1-1 at 130) (emphasis added). As the parties to the contract at

issue expressly agreed, the Commonwealth has no right, let alone "duty," to enforce the terms of the APA.  That exclusive right is granted to the actual parties to the APA—the buyer and seller—and the Foundation, and the Foundation obviously has not exercised that right.[9]

b.    *This Case Does Not Involve a Charitable Trust*

The Commonwealth cannot avoid its own contract action and contrive status as the real party in interest based on misguided references to charitable trusts.  The Commonwealth's claims in this case against for-profit Prospect do **not** involve a charitable trust.    Thus, the Commonwealth's *parens patriae* authority cannot and does not stem from its supervision of charitable assets.  *See* ECF No. 29 at 25–26.

To the extent it is referring to charitable assets underlined previously held (in 2016) by the not-for-profit Crozer Keystone Health System, the Commonwealth is mistaken. The assets that were acquired by Prospect almost nine years ago did not include any restricted charitable assets held by Crozer Keystone Health System, as evidenced by the Order that the Commonwealth itself appended to the Complaint.  As the Orphans' Court found in its decree approving the sale of the hospital system, which is attached to the Commonwealth's Complaint as Exhibit A, "[t]he assets to be sold pursuant to the Agreement do not include restricted charitable assets; accordingly, the sale will not result in a diversion of assets committed to charitable purposes . . . ."  Compl., Ex. A, ¶ 5 (ECF No. 1-1 at 33) (emphasis added).  Moreover, the Orphans' Court's decree provided that "[a]fter payment of the debts and liabilities of the Crozer-Keystone Health System, Crozer-Keystone Health System is authorized to transfer to the Crozer-Keystone Community Foundation ('the Foundation') the net proceeds and cash or investment assets remaining from the sale

---

[9] If the Foundation were to exercise that right, as a Pennsylvania citizen, there would also be complete diversity.

proceeds." *Id.* ¶ 4. This took place in 2016. In short, the Orphans' Court Order provides no basis for the Commonwealth to avoid removal.

          c.      *The Commonwealth Has Not Alleged an Injury To a "Sufficiently Substantial" Portion of its Population.*

Finally, the Commonwealth agues in its Amended Motion for Remand that the "Commonwealth also has the ability to preserve the public's access to healthcare" and as such, the Commonwealth has "a distinct responsibility to oversee and bring enforcement actions against parties who attempt to limit the public's ability to access healthcare." *See* ECF No. 29 at 26–27. However, as the Complaint makes clear, the Commonwealth's real focus is on attempting to enforce a private contract to which it is not a party. Even worse, it attempts on that private basis to commandeer a functioning hospital system and force it into receivership (which will cause the likely departure of medical professionals and an immediate breakdown in services).

But even if the Court were to determine that the Commonwealth is proceeding "to preserve the public's access to healthcare" (which it is not), the Commonwealth cannot be said to be doing so behalf of the entire Commonwealth. Instead, its Complaint is expressly confined to the relatively small percentage of Commonwealth residents who (1) reside in Delaware County **only** (only one of the 67 counties in the Commonwealth) and (2) utilize the Crozer Health System rather than the other health systems in Delaware County and beyond. *See* ECF 1-1 at 5 ("The Commonwealth of Pennsylvania acting as *parens patriae* through its Attorney General, Michelle A. Henry, files this instant complaint to sustain healthcare in Delaware County") (emphasis added); *id.* at 16 ¶ 57 (describing services "within Delaware County") (emphasis added); *id.* at 16 ¶ 58 (describing services "in Delaware County") (emphasis added); *id.* at 16 ¶ 59 (same); *id.* at 17 ¶ 62 (invoking the "the residents of Delaware County") (emphasis added). Delaware County in

its entirety is just 4.4% of the Commonwealth, and only a fraction of that percentage utilizes the Crozer System.

Accordingly, as the caselaw makes clear, this small percentage of residents in one County is not enough for the Commonwealth to invoke its *parens patriae* authority to be considered the real party in interest. The Commonwealth must allege injury to a "sufficiently substantial" portion of its population when invoking *parens patriae* authority, *Comcast Corp.*, 705 F. Supp. 2d at 446, and it has not done so here.

Relief sought on behalf of the County itself likewise confirms diversity jurisdiction. "A county is considered a citizen for diversity purposes." *In re Avandia*, 238 F. Supp. 3d at 727 (citing *Moor v. Alameda County*, 411 U.S. 693 (1973)). Even read in this forgiving light, the Complaint by its own terms only addresses certain residents of Delaware County; therefore, Delaware County, which also has not brought an action, would under this construction be the real party in interest and diversity jurisdiction would still exist.

Accordingly, as pled, the real parties in interest are (1) the parties to the contract (the Prospect Defendants and the Foundation for Delaware County) and, perhaps, (2) Delaware County, Pennsylvania.[10] Either way, the Commonwealth is not the real party in interest, and diversity jurisdiction exists.

### C.    Attorneys' Fees and Costs Against Prospect Are Not Justified.

No award of attorneys' fees (against Prospect) is justified here. Prospect's removal has an eminently reasonable basis. "Absent unusual circumstances, courts may award attorney's fees

---

[10] Again, Prospect disputes that such allegations on behalf of the residents of Delaware County are legally plausible, but they do confirm that removal is appropriate.

under § 1447 only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

Here, the allegations in the Complaint showed that the Commonwealth is not the real party in interest. As such, Prospect's recognition that the Commonwealth was not the real party in interest in this case was reasonable. The Commonwealth claims a "basic search would have revealed that the Federal Circuit Courts have long held that the Attorney General is not a citizen for purposes of diversity jurisdiction" (ECF No. 29 at 27)—yet as the actual caselaw demonstrates, it is blackletter law that states are often deemed <u>not</u> to be the real party in interest and on these facts precedent makes clear that diversity jurisdiction is appropriate.

Moreover, the cases that the Commonwealth chooses to cite throughout its Motion are wholly distinguishable. As noted earlier, this is not a case where the Commonwealth is suing to enforce consumer fraud statutes that were generally applicable to the state's citizens, or seeking to collect civil penalties that would flow to the state's treasury. Instead, this is a case where the Commonwealth seeks to enforce a contract that Prospect entered into with another private entity. As such, a thorough analysis of the caselaw would have showed the Commonwealth what is obvious: the Commonwealth is not the real party in interest. In the face of Third Circuit precedent on point, *Ramada Inns, Inc.*, 598 F.2d at 1306 (state not a real party in interest in a contract dispute between two private parties), the Commonwealth fails to cite a single case in which a state was found to be the real party in interest where the case involved a contract between private parties.

The Commonwealth compounds its errors by arguing that, "[i]n the above cited cases" in its Memorandum of Law in Support of its Amended Motion for Remand, "the Court awarded attorney fees to each of the parties that successfully remanded the case to state court." ECF No. 29 at 27. This is statement is incomplete at best, because the Commonwealth does not inform the

Court that many of the cases cited by the Commonwealth in its own motion <u>refused</u> to award attorneys' fees.[11]  There is again no explanation offered by the Commonwealth for running roughshod over binding precedent in a misguided attempt to avoid federal court supervision.  This is a straightforward issue and the Commonwealth's strained attempts to avoid this Court's oversight with cursory reasoning are unavailing.

In light of the above, Prospect considered requesting its own fees for having to respond to the Commonwealth's filing.  For now, Prospect simply requests that the Commonwealth's request be denied.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Prospect respectfully asks this Court to deny the Commonwealth's Amended Motion for Remand and its request for attorneys' fees.

January 9, 2025                                   Respectfully submitted,

*/s/Luke P. McLoughlin*
DUANE MORRIS LLP
Alan C. Kessler
Luke P. McLoughlin
Lauren Pugh
30 S. 17th Street
Philadelphia, PA 19103
LPMcLoughlin@duanemorris.com

*Counsel for Prospect Medical
Holdings, Inc. and Prospect Crozer,
LLC*

---

[11] *Compare* Motion at 18, 20-21 (mentioning the following cases) *with Harvey*, 384 F. Supp. 2d at 756 (holding that attorneys' fees were not justified); *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d at 407  (holding "no award of fees and costs is appropriate"); *People of California v. Universal Syndications, Inc.*, 2009 WL 1689651, at *6  ("The People's request for costs and fees incurred in connection with bringing the instant motion will be DENIED."); *People of Illinois v. LiveDeal, Inc.*, 2009 WL 383434, at *3 (holding "costs and fees are denied").  Each of these cases are in the Commonwealth's brief, yet the Commonwealth does not note that fees were rejected.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2025, a true and correct copy of the foregoing *Defendants Prospect Medical Holdings, Inc. and Prospect Crozer, LLC's Opposition to Plaintiff's Amended Motion for Remand* was electronically filed with the Court, and was served upon all counsel of record via the Court's CM/ECF system.

<u>*/s/Luke P. McLoughlin*</u>