## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | Civil Action No. 2:24-cv-05853-JFM |
| BY ATTORNEY GENERAL, | : | |
| DAVID W. SUNDAY, JR. | : | |
| | : | |
| Plaintiff, | : | Honorable John F. Murphy |
| | : | |
| PROSPECT MEDICAL HOLDINGS, INC., | : | |
| PROSPECT CROZER, LLC, | : | Electronically Filed |
| LEONARD GREEN AND PARTNERS, | : | |
| SAMUEL LEE, INDIVIDUALLY, and | : | |
| DAVID TOPPER, INDIVIDUALLY, | : | |
| | : | |
| Defendants. | : | |

## ORDER

**AND NOW,** this ____ day of _____, upon consideration of

the Stipulation and Agreed Upon Order Authorizing The Debtors To Enter Into The Receiver

Agreement With The Attorney General's Office for The Commonwealth of Pennsylvania, it is

hereby **ORDERED AND DECREED** that this Court lacks jurisdiction.  It is further

**ORDERED AND DECREED** that this matter is remanded to the Delaware County Court of

Common Pleas for the appointment of a receiver of the Prospect Crozer, LLC health system to

protect the health, safety and welfare of the citizens of Delaware County and the surrounding

region.

_____
Murphy, U.S.D.                              J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | Civil Action No. 2:24-cv-05853-JFM |
| BY ATTORNEY GENERAL, | : | |
| DAVID W. SUNDAY, JR. | : | |
| | : | |
| Plaintiff, | : | Honorable John F. Murphy |
| | : | |
| PROSPECT MEDICAL HOLDINGS, INC., | : | |
| PROSPECT CROZER, LLC, | : | Electronically Filed |
| LEONARD GREEN AND PARTNERS, | : | |
| SAMUEL LEE, INDIVIDUALLY, and | : | |
| DAVID TOPPER, INDIVIDUALLY, | : | |
| | : | |
| Defendants. | : | |

The Commonwealth of Pennsylvania, acting as *parens patriae* through its Attorney General, David W. Sunday, ("Commonwealth"), respectfully responds to Defendant Leonard Green and Partners LP's ("Leonard Green"), *Notice in Response to the Court's Order Dated February 18, 2025* ("Notice to the Court") as follows:

### A. THE DEBTORS' BANKRUPTCY FILING IS NOT AN INDEPENDENT GROUND THAT CONFERS JURISDICTION TO THIS COURT

In its Notice to the Court, Leonard Green contends "[t]he Debtors' bankruptcy filing is an independent ground that confers jurisdiction to this Court." DI 41 at 2.  28 U.S.C. § 1334(b) provides that "...district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  Defendant Leonard Green suggests that a bankruptcy filing confers jurisdiction to all district courts.  That is

simply not the case. 28 U.S.C. § 1334(e) expressly grants exclusive jurisdiction over all property of the debtor to the district court where the case is filed under Title 11. Defendant Prospect Medical Holdings, Inc. and Prospect Crozer, LLC (collectively, "Prospect") bankruptcy action is pending in the Northern District of Texas, not in the Eastern District of Pennsylvania. As such, this Court does not have jurisdiction as set forth in 28 U.S.C. § 1334.

1. *The Northern District of Texas is Not the Appropriate Venue to Appoint a Receiver*

The Northern District of Texas is not the appropriate venue to render this decision. Pa.R.C.P 1533 governs the judicial appointment of a receiver in Pennsylvania. At this stage of the matter, the Delaware County Court of Common Pleas ("Delaware County CCP") is the most appropriate venue to render this decision. The Commonwealth initiated litigation against Leonard Green, Prospect Medical Holdings, Inc., Prospect Crozer, LLC, Samuel Lee and David Topper, when it filed its Motion for an Order Appointing a Receiver Pursuant to Pa.R.C.P. 1533 ("Motion to Appoint Receiver") and underlying Complaint with the Delaware County Court CCP on October 28, 2024. Since then, Prospect wrongly filed its Notice and Amended Notice to Remove asserting diversity of citizenship even though it should have known that the Commonwealth is not a citizen for purposes of diversity of citizenship.

2. *Delaware County is the Appropriate Venue to Appoint a Receiver*

In 2016, Prospect purchased the Crozer hospital system, then a non-profit charitable institution, located in Delaware County. The conditions for allowing the transfer from its non-profit charitable owner, to Prospect and its subsidiaries, for-profit companies, included a requirement that, Prospect Crozer and its parent, Prospect Medical Holdings, operate the Prospect Crozer health system for 10 years. *See* Exhibit "A," Delaware County CCP's Order

2

Approving the Sale Pursuant to Asset Purchase Agreement on June 28, 2016 ("Delaware County CCP 2016 Order").

Prospect Crozer plays an important role in providing for the health and safety of Delaware County residents. It is a safety net hospital serving a large number of Medicare and Medicaid patient. Prospect Crozer receives more than 60,000 ER visits, its EMS service responds to the majority of emergency calls and as it borders the City of Chester with a high percentage of low-income resident, it provides lifesaving care to those who often have no alternatives for care. Crozer is a vital lifesaving institution for the residents of Delaware County.

Given the location of the Prospect Crozer hospital system, the types of lifesaving services provided to the residents of Delaware County, the Delaware County CCP 2016 Order, as well as the Court's and Commonwealth's continuous oversight, this matter should be remanded so that the Delaware County CCP can issue the Order Appointing a Receiver.

## B. EXIGENT CIRCUMSTANCES THAT LED THE COMMONONWEALTH AND PROSPECT TO SEEK RELIEF FROM THIS COURT TO AVOID THE CLOSURE OF PROSPECT CROZER HOSPITAL SYSTEM

On January 11, 2025, (the "Petition Date"), Prospect and each of its affiliated entities filed a voluntary petition for protection under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas ("Bankruptcy Court"). At the First Day hearing, Prospect represented that due to a lack of funding; it planned to close the Prospect Crozer hospital system unless there was an immediate buyer. On February 3, 2025, Prospect filed an Emergency Motion to Approve the Sale of Prospect Crozer in Bankruptcy Court. Despite efforts made by Prospect and the Commonwealth, Prospect's ability to sell Prospect Crozer system was not feasible at that time.

3

Given Prospect's grim representations, the Commonwealth and Prospect worked jointly to find a temporary solution to keep Prospect Crozer from shutting down by agreeing to the appointment of a receiver.

On February 5, 2025, Prospect and the Commonwealth filed the *Stipulated and Agreed Order Authorizing the Debtors to Enter into the Receiver Agreement with the Attorney General's Office for the Commonwealth of Pennsylvania* (the "Bankruptcy Court Order"), which authorized FTI Consulting, Inc. (the "Receiver") to assume operation of the Facilities while Prospect and the Commonwealth contemporaneously sought entry of an Order from this Court or another court with jurisdiction appointing the Receiver. *See* Exhibit "B," Bankruptcy Court Order. The Bankruptcy Court Order granted Prospect and the Commonwealth relief from the stay to seek appointment of a receiver in this Court or another court with jurisdiction. Contrary to Leonard Green's interpretation, the Bankruptcy Court Order did not appoint the receiver.

On February 7, 2025, Judge Stacey G.C. Jernigan entered the Bankruptcy Court Order. The Bankruptcy Court Order merely authorized FTI to operate the Facilities to ensure the continued provision of urgent health services and other public and community benefits in the best interests of all stakeholders. The Bankruptcy Court Order acknowledged that Prospect and the Commonwealth were contemporaneously seeking a Receiver Order in this Court. See Exhibit B at page 3.

The decision to file in Eastern District Court of Pennsylvania hinged on 3 factors (1) As this Court is acutely aware, Prospect filed its Notice of Removal and Amended Notice of Removal which moved this matter from the state court to the federal court; (2) Before this court was able to issue a decision regarding whether the matter should be remanded to the Delaware County of CCP, Prospect's bankruptcy filing stayed all litigation pursuant to section 362 of the Bankruptcy Code;

and (3) Given the exigent circumstances, the Commonwealth believed that since the motion and amended motion for remand could not be decided because of the bankruptcy stay, this court had sufficient jurisdiction to enter an order appointing a receiver. the fastest and most pragmatic path to the appointment of a receiver involved a jointly filed stipulation with Prospect in the Eastern District Court.

Consistent with your Honor's Order, dated February 12, 2025, the District Court is unable to enter an Order where it lacks jurisdiction. In order to rectify this unfortunate situation and the urgent need for the appointment of a receiver, the Commonwealth and Prospect proceeded to file a Joint Stipulation to Remand to Delaware County CCP. Unfortunately, Leonard Green filed a Notice to the Court opposing the Commonwealth and Prospect's Joint Stipulation to Remand. Leonard Green's opposition has created a dire situation preventing the Receiver from receiving necessary government funding to continue operating Prospect Crozer's hospital system. Without the requisite funding, the Receiver will not be able to manage operations. Two of the remaining hospital, Crozer-Chester Medical Center and Taylor hospitals will close, preventing residents from receiving life saving services.

Leonard Green's notice should not prevent this court from remanding this case to Delaware County. First, the bankruptcy court only granted relief from the stay as to the appointment receiver. The rest of the case is still stayed. Second, the action contemplated here, a receiver that will operate the hospitals and get them into financially more stable positions does not impact Leonard Green. The litigation over whether Leonard Green received an improper dividend will not be impacted if the receiver is able to stabilize Crozer's finances. Third, even though Leonard Green is not in bankruptcy, any effort by the Commonwealth to advance its claims against Leonard Green, would be met by arguments by both Leonard Green and Prospect that much of the evidence

relating to the Commonwealth's claim is held by Prospect and Prospect is not in a position to endure discovery. In short, other than having to litigate its case in Delaware County CCP rather than federal court, Leonard Green is in the exact same position from a litigation standpoint when this case is remanded.

**NOW, WHEREFORE,** the Commonwealth respectfully requests that this Court:

1. Remand this matter to the Delaware County Court of Common Pleas for the appointment of a receiver of the Prospect Crozer, LLC health system; or

2. In the alternative, schedule an Emergency Status Conference with the Parties.

February 20, 2025                                   Respectfully submitted,


By: */s/ James A. Donahue, III*
James A. Donahue, III
First Deputy Attorney General
Attorney for Plaintiff
PA ID No. 42624
Office of Attorney General
1600 Arch Street, 3rd Floor
Philadelphia, PA 19103
Phone: (215) 560-2402


Rosalind Karlin
Senior Deputy Attorney General-In-Charge
Attorney for Plaintiff
PA ID No. 308417
Office of Attorney General
1600 Arch Street, 3rd Floor
Philadelphia, PA 19103
Phone: (215) 560-2402

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2025, a true and correct copy of the foregoing *Response to the Court's Order dated February 18, 2025* was electronically filed with the Court, and was served upon all counsel of record via the Court's CM/ECF system.

/s/ James A. Donahue, III , *Esq.*

# EXHIBIT A

COMMONWEALTH OF PENNSYLVANIA
DELAWARE COUNTY

IN THE ORPHANS COURT DIVISION            No. 0342-1997

OF THE COURT OF COMMON PLEAS

OF DELAWARE COUNTY, PENNSYLVANIA

**IN THE MATTER OF ACQUISITION OF ASSETS OF
CROZER-KEYSTONE HEALTH SYSTEM**

**FINAL DECREE**

AND NOW, TO WIT, this _28TH_ day of _JUNE_, 2016, upon consideration of

the Petition for Court Approval of the Acquisition of the Assets of the Crozer-Keystone Health

System, and a response by the Attorney General of the Commonwealth of Pennsylvania and any

other party, and following a public hearing duly advertised and held pursuant to the Review

Protocol for Fundamental Change Transactions Affecting Health Care Nonprofits conducted by

the Attorney General of the Commonwealth of Pennsylvania, on May 4, 2016, and following a

hearing held before the Court on the 27th day of June, 2016, it is hereby ORDERED and

DECREED that the prayer of the Petition for Court Approval of the Acquisition of the Assets of

the Crozer-Keystone Health System be, and the same is hereby, GRANTED, and the Court

makes the following findings of fact and conclusions of law:

1.    This Court has jurisdiction over the within Petition and the Petitioner pursuant to

Sections 314, 5547(a) and (b) and 5930 of the Pennsylvania Nonprofit Law of 1988, as amended

(the "NCL"), 15 Pa. C.S.A. §§ 314, 5547(a) and (b) and 5930; under Section 711(21) of the

Pennsylvania Probate, Estates and Fiduciary Code, (the "PEF Code"), 20 Pa. C.S.A. § 711(21);

and under Rule 2156 of the Pennsylvania Rules of Judicial Administration.

2.      Pursuant to Section 726 of the PEF Code, 20 Pa. C.S.A. § 726, venue of the
Petition is proper in Delaware County, Pennsylvania.

3.      The sale of the assets of the Crozer-Keystone Health System to Prospect Crozer,
LLC, and the payment of proceeds to the Crozer-Keystone Health System pursuant to the Asset
Purchase Agreement ("Agreement") and as described in the Petition, is approved.

4.      After payment of the debts and liabilities of the Crozer-Keystone Health System,
Crozer-Keystone Health System is authorized to transfer to the Crozer-Keystone Community
Foundation ("the Foundation") the net proceeds and cash or investment assets remaining from
the sale proceeds.

5.      The assets to be sold pursuant to the Agreement do not include restricted
charitable assets; accordingly, the sale will not result in a diversion of assets committed to
charitable purposes from the objects for which such assets were donated, granted or devised, and
the sale is not subject to the provisions of 15 Pa. C.S.A. §5547(b).

6.      The sale of assets pursuant to the Agreement will not result in any prohibited self-
dealing or inurement of charitable assets for the benefit of private individuals.

7.      As a condition of this Decree, Prospect shall submit Status Reports to the Office
of Attorney General, Charitable Trusts and Organizations Division providing informational
accounting of satisfying its $200 million commitment to modernize facilities and improve
services, accounting of Prospect's charity care, and Prospect's initiatives to promote wellness,
health education and other community programs, to be submitted on a yearly basis for five years
post Closing Date.

8.      As a condition of this Decree, Crozer-Keystone Health System and/or the
Foundation shall provide Status Reports to the Office of Attorney General, Charitable Trusts and

Organizations Division, providing informational accounting of the distribution of the proceeds of the sale and any transfer or use of restricted funds on or before September 30, 2017.

9.    As a condition of this Decree, the Crozer-Keystone Community Foundation shall submit Status Reports to this Court and the Office of Attorney General, Charitable Trusts and Organizations Division providing informational accounting of the Foundation's charitable activities on the 1st, 4th, 7th and 10th anniversary of the Closing Date.

10.    In the event that future bequests or donations are made to Crozer-Keystone Health System, Prospect and/or the Foundation will request that the donor direct the bequest to the Foundation.

11.    Without admitting liability and without waiving any defenses, the Petitioner or Foundation shall set aside and maintain sufficient funds to settle or satisfy any judgment in the pending tax appeals by Chester-Upland School District vs. Crozer-Chester Medical Center and any additional transfer tax liability of Crozer-Keystone Health System arising as a result of the instant transaction (the "Restricted Tax Fund"). The Petitioner or Foundation shall maintain the Restricted Tax Fund until final resolution of the litigation.

12. The purpose clause of the Amended and Restated Articles of Incorporation of the Crozer Keystone Community Foundation shall read as follows:

The Corporation is organized, and may undertake any activities authorized, under the provisions of the Nonprofit Corporation Law of 1972, as amended, exclusively for charitable, scientific and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as the same may be amended and modified or replaced by any future United States Internal Revenue Law (the "Code"), or for any purpose pursuant to court order. The purpose of the

Corporation is to build a better community through the support of healthcare

education, healthcare-related social service and healthcare initiatives and

programs in Delaware County.

~~13.   The Petitions to Intervene on a Limited Basis and Motions to Bifurcate the~~

~~Proceedings filed by the Borough of Upland and the Upper Darby School District are hereby~~

~~denied.~~   cfk, 6-28-16

BY THE COURT:

HONORABLE CHAD F. KENNEY,
PRESIDENT JUDGE

ATTACHMENT B

## AMENDED AND RESTATED
## ARTICLES OF INCORPORATION

OF

## CROZER-CHESTER FOUNDATION

In compliance with all the requirements of 15 Pa. C.S. Section 5915 (relating to articles of incorporation), the undersigned, desiring to amend and restate its Articles of Incorporation, hereby certifies that:

1.    **Name.**    The name of the Corporation is **Crozer-Keystone Community Foundation.**

2.    **Principal Office.**    The location and post office address of the registered office of the Corporation in this Commonwealth is One Medical Center Boulevard, Upland, PA  19013, Delaware County, PA.

3.    **Purposes and Powers.**    The Corporation is organized, and may undertake any activities authorized, under the provisions of the Nonprofit Corporation Law of 1972, as amended, exclusively for charitable, scientific and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as the same may be amended and modified or replaced by any future United States Internal Revenue Law (the "Code"), or for any purpose pursuant to court order. The purpose of the Corporation is to build a better community through the support of healthcare education, healthcare-related social service and healthcare initiatives and programs in Delaware County.

Notwithstanding any other provision of these Articles, the Corporation shall not engage directly or indirectly in any activity which would prevent it from qualifying, and continuing to qualify, as a Corporation described in Section 501(c)(3) of the Code (hereinafter referred to in these Articles as an "exempt organization"), or as a Corporation contributions to which are deductible under Section 170(c)(2) of the Code. No substantial part of the activities of the Corporation shall be devoted to the carrying on of propaganda, or otherwise attempting to influence legislation (except as otherwise provided in Section 501(h) of the Code), and the Corporation shall not participate in or intervene in (including the publishing or distributing of statements) any political campaign on behalf of or in opposition to any candidate for public office.

4.    **Restricted Funds.**    Unless otherwise subject to donor specific restrictions, any funds transferred to the Corporation in connection with the merger of Delco Memorial Foundation, with and into the Corporation, and the proceeds received from Crozer-Keystone Health System in connection with its sale to Prospect Medical Holdings, Inc., (such funds collectively hereinafter referred to as the "Transferred Restricted Funds"), shall be restricted to solely support the purposes set forth in paragraph 3 above. The Corporation may support other

charitable purposes, as determined by its Board of Directors, through any funds that are not Transferred Restricted Funds and that are not otherwise subject to donor-specific restrictions.

5.    **Nonprofit Status**.  The Corporation does not contemplate pecuniary gain or profit, incidental or otherwise and is organized on a nonstock basis.

6.    **Term**.  The term for which the Corporation is to exist is perpetual.

7.    **Members**.  The Corporation shall have no members.

8.    **Amendment**.  These Articles of Incorporation and the Bylaws of the Corporation may be recommended for amendment, restatement, or repeal, or new Bylaws or Articles of Incorporation may be recommended upon the approval of the Board of Directors.  No provisions of the Articles of Incorporation or Bylaws of the Corporation shall vest any property or contract right in any person.

9.    **No Private Inurement**.  Notwithstanding any other provision of these Articles, no part of the net earnings of the Corporation shall inure to the benefit of or be distributable to its, Directors, officers, or any other private individual; provided, however, that the Corporation shall be authorized and empowered to pay reasonable compensation for services rendered to the extent that such payments do not prevent it from qualifying, and continuing to qualify, as an exempt organization and to make such lawful payments and distributions in furtherance of the purposes set forth in Article 3 hereof as may from time to time be either required or permitted by Section 501(c)(3) of the Code.

10.    **Dissolution**.  Upon the dissolution or liquidation of the Corporation, whether such be de jure or de facto, in whole or in part, after paying or making provision for the payment of all of the liabilities of the Corporation, any remaining assets of the Corporation shall be distributed to one or more organizations organized and operated exclusively for charitable, educational, religious, or scientific purposes as shall at the time qualify as exempt organizations under Section 501(c)(3) of the Code, as amended, as the Board of Directors of the Corporation shall determine, subject to the laws of the Commonwealth of Pennsylvania.  No private individual shall share in the distribution of any Corporation net assets upon dissolution of the Corporation.

11.    **Code References**.  References in these Articles to a section of the Code shall be construed to refer both to such section and to the regulations promulgated thereunder, as they now exist or may hereafter be amended, and to the corresponding provisions of any future federal tax code and the regulations thereunder.

# EXHIBIT B



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed February 7, 2025

United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT MEDICAL HOLDINGS, INC., *et al.*,[1] | Case No. 25-80002 (SGJ) |
| Debtors. | (Jointly Administered) |

### STIPULATION AND AGREED ORDER AUTHORIZING THE DEBTORS TO ENTER INTO THE RECEIVER AGREEMENT WITH THE ATTORNEY GENERAL'S OFFICE FOR THE COMMONWEALTH OF PENNSYLVANIA

This stipulation and agreed order (this "Order")[2] is made and entered into by and among

Prospect Medical Holdings, Inc. and its debtor affiliates, as debtors and debtors in possession

(collectively, the "Debtors"), and the Commonwealth of Pennsylvania (the "Commonwealth")

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Receiver Agreement or the Sale Motion (as defined below), as applicable.

through its Attorney General, David W. Sunday, Jr., (the "Pennsylvania AG" and together with

the Debtors, the "Parties") as *parens patriae*. The Parties hereby stipulate and agree as follows:

## RECITALS

**WHEREAS,** beginning on January 11, 2025 (the "Petition Date"), each of the Debtors

filed a voluntary petition for relief under chapter 11 of the United States Code (the "Bankruptcy

Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Court");

**WHEREAS,** on February 3, 2025, the Debtors filed the *Debtors' Emergency Motion for*

*Entry of an Order (I) Approving and Authorizing (A) the Asset Purchase Agreement and the*

*Private Sale of the Pennsylvania Hospitals Free and Clear of Interests, (B) the Assumption and*

*Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Settlement by and*

*among the Debtors, the Pennsylvania Attorney General, Samuel Lee, and David Topper, Pursuant*

*to Bankruptcy Rule 9019; and (II) Granting Related Relief* [Docket No. 332] (the "Sale Motion"),

seeking approval to, among other things, transfer the Pennsylvania Debtor Entities' (as defined in

the Receiver Agreement) assets, including the Facilities (as defined in the Receiver Agreement),

in light of the Pennsylvania Debtor Entities' unsustainable liquidity crisis;

**WHEREAS,** the Parties have been working tirelessly to find a consensual resolution

regarding such expedited Transfer (as defined in the Receiver Agreement), and, specifically, to

address certain operational and financial needs related to the Facilities (arising prior to the

Transfer), that the Pennsylvania Debtor Entities are unable to meet in their current financial

circumstances;

**WHEREAS,** the Parties have agreed to have FTI Consulting, Inc. assume the operation of

the Facilities, pursuant to the provisions of applicable laws, regulations, and a receiver agreement,

substantially in the form attached hereto as **Exhibit A** (the "Receiver Agreement"), in order to

eliminate uncertainty regarding the Facilities' finances and to ensure the continued provision of health services and other public and community benefits in the best interests of all stakeholders; and

**WHEREAS**, contemporaneously herewith, the Parties filed an agreed order (the "Receiver Order") in the United States District Court for the Eastern District of Pennsylvania, Case No. 2024-05823, authorizing the appointment of FTI Consulting, Inc. (the "Receiver") as the receiver over the Facilities.

**NOW, THEREFORE, IT IS IT IS HEREBY STIPULATED AND AGREED, AND UPON APPROVAL BY THE COURT OF THIS STIPULATION, IT IS SO ORDERED THAT:**

1.    The Receiver Agreement, substantially in the form attached hereto as **Exhibit A**, including all other ancillary documents, and all of the terms and conditions thereof, and the Receiver appointment contemplated thereby, are hereby approved in all respects and the Debtors are authorized to enter into the Receiver Agreement.

2.    The rights, duties and obligations of the Receiver from and after the date the Receiver is appointed (the "Receiver Appointment Date") are approved as set forth in the Receiver Agreement; provided, that all obligations of the Pennsylvania Debtor Entities as debtors in possession (including, but not limited to, all reporting requirements) shall remain obligations solely of the Pennsylvania Debtor Entities and shall not become obligations of the Receiver. Additionally, the Receiver shall not have responsibility for any liens, interests or claims of the Debtors or their estate arising before the Receiver Appointment Date.

3.    Until further order of this Court, on the Receiver Appointment Date, the Pennsylvania Debtor Entities shall be placed in the control of the Receiver, and the Receiver shall operate the Facilities pursuant to the Receiver Agreement and the Receiver Order, and under the

supervision of this Court. For the avoidance of doubt, the Receiver shall be authorized to begin operating the Facilities immediately while entry of the Receiver Order is pending.

4.    The automatic stay under Section 362 of the Bankruptcy Code shall not apply to the Receiver or its actions pursuant to this Order and the Receiver Agreement, including, without limitation, its continued operations of the Pennsylvania Debtor Entities.

5.    The Receiver is excused from the requirement of complying with section 543(b) of the Bankruptcy Code.

6.    The Receiver is not a mere continuation of the Debtors or their estate, and there is no continuity, no common identity, and no continuity of enterprise between the Receiver and the Debtors. The Receiver is not holding itself out to the public as a continuation of the Debtors. The Receiver is not a successor to the Debtors or the Debtors' estate by reason of any theory of law or equity, and the appointment of the Receiver does not amount to a consolidation, merger, or de facto merger of the Receiver or the Debtors.

7.    Nothing in this Order constitutes (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim or interest under applicable law or nonbankruptcy law; (c) a promise or requirement to pay any claim; (d) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (e) a request for or granting of approval for assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code; or (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates.

8. Notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9. The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

10. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

### # # # END OF ORDER # # #

Order submitted by:

**SIDLEY AUSTIN LLP**
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:     (214) 981-3300
Facsimile:     (214) 981-3400
Email:         tom.califano@sidley.com
               rpatel@sidley.com

*and*

William E. Curtin (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:     (212) 839-5300
Facsimile:     (212) 839-5599
Email:         wcurtin@sidley.com
               pventer@sidley.com
               anne.wallice@sidley.com

*Proposed Attorneys to the Debtors*
*and Debtors in Possession*

## **EXHIBIT A**

**Receiver Agreement**

# FORM OF RECEIVER AGREEMENT

## AMONG

## THE ATTORNEY GENERAL'S OFFICE FOR THE COMMONWEALTH OF PENNSYLVANIA

## AND

## Prospect Penn, LLC; Prospect Crozer, LLC; Prospect CCMC, LLC; Prospect DCMH, LLC; Prospect Crozer Urgent Care, LLC; Prospect Penn Health Club, LLC; Prospect Crozer Home Health and Hospice, LLC; Prospect Crozer Ambulatory Surgery, LLC; Prospect Health Services PA, Inc.; and Prospect Provider Group PA, LLC[1]

This Receiver Agreement (the "Agreement") is by and among the Commonwealth of Pennsylvania (the "Commonwealth") through its Attorney General, David W. Sunday, Jr., (the "Pennsylvania AG") as *parens patriae*, and the Pennsylvania Debtor Entities, each as a debtor and debtor in possession in the voluntary cases commenced beginning on January 11, 2025, by each Pennsylvania Debtor Entity and certain of their affiliates in the United States Bankruptcy Court for the Northern District of Texas (the "Court"), which cases are being jointly administered under Case Number 25-80002 (SGJ) (the "Chapter 11 Cases").

WHEREAS, the Pennsylvania Debtor Entities are affiliates within the Prospect Medical Holdings, Inc.'s corporate structure, which includes other hospitals and provider entities operating nationwide (such non-Pennsylvania Debtor Entities, collectively, the "Non-Pennsylvania Debtor Entities" and, together with the Pennsylvania Debtor Entities, collectively, the "Debtors");

WHEREAS, the Pennsylvania AG and the Debtors have been working tirelessly to find a consensual resolution regarding an expedited transition of the Pennsylvania Debtor Entities' assets, including the Facilities and the interests in the Joint Ventures, (the "Transfer") in light of the Pennsylvania Debtor Entities' unsustainable liquidity crisis;

WHEREAS, the Pennsylvania Debtor Entities have certain operational and financial needs related to the Facilities arising prior to the Transfer, which they are unable to meet in their current financial circumstances;

WHEREAS, the Pennsylvania Debtor Entities have a legal obligation to continue to operate the Facilities until at least June ___, 2026;

---

[1] Collectively, these entities shall be referred to as the "Pennsylvania Debtor Entities." The Pennsylvania Debtor Entities own and operate The Springfield Hospital, The Taylor Hospital, The Delaware County Memorial Hospital, and The Crozer Chester Medical Center and provide various outpatient services (collectively, the "Facilities") in the area surrounding the Facilities. Certain of the Pennsylvania Debtor Entities own joint venture interests in Brinton Lake Management Company, LLC, Cyberknife Center of Philadelphia, LLC, Delaware Valley Sleep Management Company, LLC, Del-Val Equipment Leasing Company, LLC, Dialysis Access Centers, LLC, Grayhawk Home Care 1, LLC, Haverford Management Company, LLC, Tech Park Properties, Inc., University Technology Park, Inc., DCMH MOB Associates, and Springfield ASC, LLC (collectively, the "Joint Ventures").

**WHEREAS**, the Pennsylvania AG has retained FTI, Consulting, Inc. ("FTI") to act as a receiver;

**WHEREAS**, the Pennsylvania AG and the Pennsylvania Debtor Entities have agreed to have FTI (the "Receiver") assume the operation of the Facilities, pursuant to the provisions of applicable laws, regulations, and this Agreement (the "Receivership"), with such Receivership being effective as of the date of entry of the order appointing the Receiver in *Commonwealth of Pennsylvania v. Prospect Medical Holdings Inc., et al.*, No. 2024-05823, in the United States District Court for the Eastern District of Pennsylvania (the "Receivership Date");

**WHEREAS,** the Pennsylvania AG, the Pennsylvania Debtor Entities, and the Receiver recognize that eliminating uncertainty regarding the Facilities' finances and ensuring continued provision of health services and other public and community benefits they provide is in the best interests of all stakeholders; and

**NOW, THEREFORE,** in consideration of the mutual understandings and conditions described in this Agreement, the parties agree as follows:

## RECEIVERSHIP

1.    The Receiver is appointed as receiver of the Facilities to commence its operations as Receiver on the Receivership Date. The Receiver accepts the appointment as Receiver of the Facilities. The Receiver shall manage operations and fund operations and liabilities of the Facilities from the Facilities' cash and accounts receivables and from the Payments (as defined below) as set forth in paragraph 6. The Receiver, via funds received from operations and the Commonwealth, may fund (a) working capital sums necessary to cover the Facilities' needs and expenses, (b) its obligations hereunder and in respect of the Receivership, and (c) to maintain the Facilities in good repair. Nothing contained in this Agreement shall make the Receiver responsible for any claims, obligations, liabilities, costs, or expenses howsoever arising or relating to any period prior to the Receivership Date hereof.

2.    Except as herein provided, the duration of appointment of the Receiver as receiver of the Facilities shall be for a period of not more than [thirty (30) days] from the Receivership Date, subject to renewal or extension (the "Term of Receivership"). The Pennsylvania AG may, in its discretion and subject to written agreement with the Pennsylvania Debtor Entities, extend the duration of this Agreement until appointment of a new receiver acceptable to the Pennsylvania AG or the issuance of an operating certificate to a new established operator. Any such extensions shall be on the same terms and conditions a set forth herein or such other terms and conditions as may be agreed upon in writing by the parties.

3.    The Pennsylvania Debtor Entities agree to promptly and diligently execute all documents necessary to transfer full control of the operations and finances of the Facilities to the Receiver.

4.    The Pennsylvania Debtor Entities waive any rights they may have under applicable law or otherwise to terminate this Agreement or terminate the appointment of the Receiver as receiver except as expressly set forth in this Agreement, absent further order of the Court.

5.    [Notwithstanding anything in this Agreement to the contrary, all accounts receivable from a period agreed to by the Pennsylvania Debtor Entities and the Pennsylvania AG forward shall, upon collection, be used by the Receiver for the benefit of the Facilities pursuant to the terms of this Agreement and consistent with all provisions of law. The pre-Receivership Date accounts receivable shall remain property of the Pennsylvania Debtor Entities' estate.][2]

6.    [The Receiver shall operate the business conducted at the Facilities on and after the Receivership Date. The Receiver shall be liable for all post-Receivership accounts payable and other liabilities arising out of or relating to the operation of the business conducted at the Facilities during the Term of the Receivership. Notwithstanding the foregoing, any profit generated during the Receivership shall be retained by the Receiver, subject to the terms set forth in paragraph 7 of this Agreement.][3]

7.    In the event of the expiration or termination of the Receivership, the Receiver shall execute and deliver such assignments, reassignments, conveyances, releases, and other documents as may be reasonably required to restore the parties to the *status quo ante* and to transfer the assets, liabilities, and operations of the Facilities, and divest itself of all incidents of ownership thereof to such person(s) or entities as the Pennsylvania Debtor Entities shall designate, subject to the approval of the Pennsylvania AG.

8.    The Receiver shall not incur any obligation or make any borrowings secured by the Facilities or any part of the Facilities or the Pennsylvania Debtor Entities' assets, or undertake any transaction which would place an encumbrance upon the assets of the Facilities or the Pennsylvania Debtor Entities' assets during the Term of the Receivership without the prior written approval of the Pennsylvania Debtor Entities and approval of the Court in the Chapter 11 Cases.

9.    The Receiver shall have powers, duties, rights, and obligations, including, but not limited to the following:

    a.    [Identify and implement both short-term and long-term process improvement and control initiatives within the Facilities;

    b.    Create tools to measure and monitor improvements;

    c.    Maintain the records, books, accounts, and other documents of the Pennsylvania Debtor Entities;

---

[2] Subject to ongoing discussions among the parties.
[3] Subject to ongoing discussions among the parties.

d.    Manage the daily operations of the Pennsylvania Debtor Entities, including collection of any income, profits, rents and other revenues owed Pennsylvania Debtor Entities;

e.    Take any reasonable action to ensure that that the Pennsylvania Debtor Entities comply with all laws applicable to the operation of the Facilities as provided under the laws of the United States and the Commonwealth of Pennsylvania;

f.    Engage the following individuals, including but not limited to, contractors, subcontractors, materialmen, architects, engineers, consultants, managers, guards, clerks, accountants, or other employees, agents, independent contractors or professionals as the Receiver may, in the Receiver's sole and absolute discretion, deem appropriate or desirable to implement and effectuate the rights and powers herein granted;

g.    Purchase inventory, operating supplies, equipment and other personal property as necessary in the Receiver's sole and absolute discretion to operate the Facilities;

h.    Enter into, modify, amend, renew or cancel such leases, whether of real or personal property, tenancy agreements or contracts relating to the Facilities, under such terms and conditions as the Receiver may, in the Receiver's sole and absolute discretion, deem appropriate or desirable, provided that the Receiver may cooperate with the Pennsylvania Debtor Entities to reject leases in the Chapter 11 Cases; provided, further, that this paragraph 9(h) is subject to section 365 of title 11 of the United States Code;

i.    Enter into, modify, amend, terminate, or renew any contracts with employees, providers and vendors, provided that the Receiver may cooperate with the Pennsylvania Debtor Entities to reject such contracts in the Chapter 11 Cases; provided that this paragraph 9(i) is subject to section 365 of title 11 of the United States Code;

j.    Collect and receive any rents and profits, insurance payments, income or proceeds due to the Pennsylvania Debtor Entities;

k.    Make repairs and alterations to the Facilities;

l.    Terminate lines of service or close facilities;

m.    Do any lawful acts reasonably requested by the Pennsylvania AG to protect the Facilities; and

n.    Assist management, if required, in the development of and implementation of cash management and working capital strategies, tactics and processes.]

10.    The Pennsylvania Debtor Entities shall retain all obligations related to their role as debtors in possession in the Chapter 11 Cases and all ongoing reporting obligations related thereto.

## COOPERATION OBLIGATIONS

11.    The Pennsylvania AG and the Debtors recognize that there exists a mutuality of interests among and between them. Therefore, the parties acknowledge and agree that they shall cooperate with each other over the course of the Effective Period (as defined below) to fund and operate the Facilities and find a consensual resolution regarding the Transfer.

12.    The Pennsylvania Debtor Entities shall take all commercially reasonable steps to add the Receiver as an additional insured or otherwise provide reasonably satisfactory insurance coverage.

13.    The Pennsylvania AG shall have the right to audit the Pennsylvania Debtor Entities during the Term of Receivership. The Debtors shall cooperate with any such audit that may be initiated.

## PAYMENTS

14.    Subject to the terms set forth herein, the Commonwealth is committing to $[•] million to the Receiver (the "Payments").

15.    The Receiver hereby agrees to the following as conditions of receipt of the Payments:

    a.    The Payments shall remain unencumbered and be used solely for the purposes of the Facilities' working capital, patient care and employee salaries in the Commonwealth. The Receiver shall be responsible for ensuring the exclusive use of funds for these purposes.

    b.    The Payments shall not be used to (i) refinance or pay down any pre-existing debt, (ii) pay any amounts due to any lenders, agents, or attorneys or their professional fees, (iii) pay any amounts in non-hospital executive compensation, (iv) make any adequate protection payments to any secured creditor under the Bankruptcy Code, or (v) fund the operations of the non-Pennsylvania Debtor Entities.

    c.    The Payments shall not serve as collateral for any preexisting debt or new debt incurred, shall not be considered "cash collateral" under Section 363 of the Bankruptcy Code, and shall remain unencumbered.

16.    Upon providing five (5) calendar days' notice and without further order, (a) the Pennsylvania AG shall have the right to immediately terminate this Agreement if the Pennsylvania Debtor Entities violate any term or condition in this Agreement, unless cured, in the Pennsylvania AG's reasonable determination or (b) Pennsylvania Debtor Entities shall have the right to immediately terminate this Agreement if the Pennsylvania AG or the Receiver violate any term or condition in this Agreement, unless cured, in the Pennsylvania Debtor Entities' reasonable determination.

17.    The Commonwealth is disbursing these Payments to the Receiver subject to (1) any necessary legislative appropriation or authorization; (2) all other state approvals; (3) all

other necessary federal approvals; and (4) all other requirements for full federal financial participation ("FFP") or other federal funding.

18.   Notices necessary or required under this Agreement shall be sufficient if provided in writing or email to the parties at the addresses set forth below. Notice shall be sent to:

| | |
|---|---|
| If to the Pennsylvania AG: | James A. Donahue, III<br>First Deputy Attorney General<br>Pennsylvania Office of Attorney General<br>16th Floor Strawberry Square<br>Harrisburg, PA 17120<br>Email: jdonahue@attorneygeneral.gov |
| | Rosalind M. Karlin<br>Senior Deputy Attorney General-Attorney-In-Charge<br>Pennsylvania Office of Attorney General<br>1600 Arch Street, Suite 300<br>Philadelphia, PA  19103<br>Email: rkarlin@attorneygeneral.gov |
| If to Pennsylvania Debtor Entities: | Prospect Medical Holdings, Inc.<br>3415 South Sepulveda Boulevard, 9th Floor<br>Los Angeles, CA 90034<br>Attn:  General Counsel<br>Email: fsaidara@pmh.com |
| And a copy to: | Sidley Austin LLP<br>787 Seventh Avenue<br>New York, New York 100019<br>Attn:    Thomas R. Califano<br>          William E. Curtin<br>          Anne G. Wallice<br>Email: tom.califano@sidley.com,<br>          wcurtin@sidley.com,<br>          anne.wallice@sidley.com |

19.   This Agreement may be amended at any time in writing, signed by the parties.

20.   The parties agree to discuss in good-faith amendments to this Agreement at any time.

21.   This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania without the application of any conflict of laws principles.

22.   No provision of this Agreement is or shall be construed as being for the benefit of, or enforceable by, any person or entity that is not a party to the Agreement.